UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALAN BRUCE MCFARLANE, Petitioner, v. STEPHEN FREITAS,[1] Respondent. | Case No. 16-cv-06401-JD  **ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DENYING CERTIFICATE OF APPEALABILITY** |

Alan MacFarlane, a pro se probationer, has brought a habeas petition pursuant to 28 U.S.C. § 2254. The Court ordered respondent to show cause why the writ should not be granted. Respondent filed an answer and a memorandum of points and authorities in support of it, and lodged exhibits with the Court. MacFarlane filed a reply. The petition is denied.

## BACKGROUND

A jury found MacFarlane guilty of one count of unlawful possession of an assault rifle, former Cal. Penal Code section 12280(b). *People v. MacFarlane*, No. A141326, 2016 WL 3634286, at *1 (Cal. Ct. App. June 29, 2016). At sentencing on February 27, 2014, the trial court suspended imposition of sentence and placed MacFarlane on formal probation, with the opportunity to have his conviction reduced to a misdemeanor after one year. Clerk's Transcript ("CT") at 226-27, Reporter's Transcript ("RT") at 811-15. On June 29, 2016, the California Court of Appeal affirmed the judgment. *MacFarlane*, 2016 WL 3634286, at *2. The California Supreme Court denied MacFarlane's petition for review. Answer, Exs. I, J.

---

[1] Respondent notes that the proper respondent is David Koch, the Chief Probation Officer for Sonoma County. That respondent will be substituted on the docket.

The California Court of Appeal summarized the facts as follows:

**INTRODUCTION**

Alan Bruce MacFarlane ("defendant"), a Vietnam veteran with limited mobility in one arm, purchased a rifle at a California gun shop legally and then modified it to accommodate his disability. Unbeknownst to him, he asserted, his modifications rendered the firearm an illegal assault weapon under California law. A few days after he altered the weapon, MacFarlane voluntarily allowed a deputy sheriff into his home to investigate an unrelated matter, who then discovered the weapon in MacFarlane's kitchen in plain view and seized it. A jury convicted MacFarlane of violating former Penal Code section 12280, subdivision (b),which makes it unlawful to possess an assault weapon.

It is undisputed the weapon meets the definition of an illegal assault weapon under California law. That definition includes a "semiautomatic, centerfire rifle that has the capacity to accept a detachable magazine and any one of the following: [¶] (A) A pistol grip that protrudes conspicuously beneath the action of the weapon. . . . [¶] (C) A folding or telescoping stock . . . . [¶] . . . [¶] [or] (F) A forward pistol grip." (former Pen.Code, § 12276.1, added by Stats. 1999, ch. 129, § 7, p. 1805, amended by Stats. 2000, ch. 967, § 3, p. 7076; Stats. 2002, ch. 911, § 3, p. 5743, and repealed and recodified by Stats. 2010, ch. 711, §§ 4, 6 at Pen.Code § 30515.) The gun here possessed all of those features. MacFarlane's sole defense was that he didn't know the firearm, as modified, was illegal.

. . . He also argues the trial court improperly quashed a defense subpoena directed to another deputy sheriff with firearms expertise who examined the rifle back at the sheriff's office and, MacFarlane contends, could not tell whether the rifle was an illegal assault weapon. Since MacFarlane's criminal intent was the sole issue at trial, MacFarlane argues the exclusion of this witness violated his constitutional right to present a defense.

We reject both contentions and affirm his conviction.

**BACKGROUND**

On November 17, 2011, Sonoma County Sheriff's Deputy Sean Jones visited defendant's house to investigate a neighbor's complaint that defendant was displaying a defaced Mexican flag that was disturbing neighborhood children. Defendant allowed Jones and another officer inside, after Jones inquired about smelling marijuana and defendant told him he smoked it for medical purposes and had his doctor's paperwork inside.

While investigating defendant's marijuana supply, Jones noticed a black rifle sitting in plain view on the kitchen counter. Jones wrote in his police report that "[t]he rifle was a centerfire rifle, had a pistol grip stock, fore end grip, detachable 10 round magazines and a collapsible stock." Defendant told Jones he bought the rifle locally, in California, and that it was legal. Defendant also volunteered that

2

he had modified the rifle, by adding the collapsible stock and fore-end grip. Defendant then showed Jones the original stock and magazine. Jones wrote in his police report that he believed the rifle was an assault weapon but was unsure, so he contacted Deputy Sheriff Erick Gelhaus who was the sheriff department's armorer and firearms instructor. Deputy Gelhaus advised him to seize the rifle so that Deputy Gelhaus could inspect it at the station, and Jones did so.

Thereafter, Deputy Gelhaus requested that the rifle be sent to the Department of Justice in order to determine whether or not it was an assault weapon. A forensic arms expert from the California Department of Justice then examined the rifle and concluded it met the definition of an assault weapon under California law.

Defendant was subsequently charged with one count of felony possession of an assault weapon, under former section 12280(b).

. . . .

Defendant also subpoenaed Deputy Gelhaus for trial, contending his testimony was relevant to the issue of criminal intent since Gelhaus could not determine whether the rifle was illegal either. Deputy Gelhaus, who by then was on administrative leave, had recently come under criminal investigation, and become the subject of intense media intention, due to a highly publicized incident in which he fatally shot a teenager after mistaking the teenager's pellet gun for an assault weapon. FN 4. The Sonoma County Sheriff's Office, appearing through Sonoma County Counsel, moved to quash the subpoena and the trial court granted its motion. The court ruled Deputy Gelhaus' testimony was irrelevant and also granted the motion under Evidence Code section 352, concluding that any minimal relevance would be substantially outweighed by a substantial risk of undue consumption of time, confusion of the issues, and misleading the jury.

> FN 4. Repeated references below to the shooting incident by defense counsel, the court and counsel for Deputy Gelhaus demonstrate that all concerned were aware of the incident, and the publicity it generated. We therefore grant defendant's unopposed request to take judicial notice of the October 22, 2013 shooting incident, as well as the fact that no charges were filed against Deputy Gelhaus who returned to full duty. (*See* Evid.Code, §§ 459, 452 subds. (g), (h).)

A two-day trial ensued, at which Deputy Jones, John Yount, the forensic firearms expert from the California Department of Justice, and defendant testified. A jury convicted defendant as charged. Defendant then timely appealed.

*MacFarlane*, 2016 WL 3634286, at *1-3 (footnotes omitted).

## STANDARD OF REVIEW

A district court may not grant a petition challenging a state conviction or sentence on the basis of a claim that was reviewed on the merits in state court unless the state court's adjudication

of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). The first prong applies both to questions of law and to mixed questions of law and fact, *Williams v. Taylor*, 529 U.S. 362, 407-09 (2000), while the second prong applies to decisions based on factual determinations, *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

A state court decision is "contrary to" Supreme Court authority only if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 412-13. A state court decision is an "unreasonable application of" Supreme Court authority if it correctly identifies the governing legal principle from the Supreme Court's decisions but "unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. The federal court on habeas review may not issue the writ "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411. Rather, the application must be "objectively unreasonable" to support granting the writ. *Id.* at 409.

Under Section 2254(d)(2), a state court decision "based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *See Miller-El*, 537 U.S. at 340; *see also Torres v. Prunty*, 223 F.3d 1103, 1107 (9th Cir. 2000). In conducting its analysis, the federal court must presume the correctness of the state court's factual findings, and the petitioner bears the burden of rebutting that presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

The state court decision to which § 2254(d) applies is the "last reasoned decision" of the state court. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803-04 (1991); *Barker v. Fleming*, 423 F.3d 1085, 1091-92 (9th Cir. 2005). When there is no reasoned opinion from the highest state court to consider the petitioner's claims, the Court looks to the last reasoned opinion. *See Nunnemaker* at 801-06; *Shackleford v. Hubbard*, 234 F.3d 1072, 1079 n.2 (9th Cir. 2000). In this case the Court

4

looks to the opinion of the California Court of Appeal for the sole claim in the petition.

MacFarlane's sole ground for federal habeas relief is that the trial court violated his due process rights and right to present a defense by quashing a defense subpoena.

## RIGHT TO PRESENT A DEFENSE

MacFarlane argues his rights were violated when the trial court quashed a subpoena for Deputy Gelhaus to testify.

**Background**

The California Court of Appeal set forth the background and relevant state law with respect to the Assault Weapons Control Act ("AWCA").

> To put this appeal in context, we begin first with the assault weapons possession statute. For, as noted, defendant's only contention at trial was that he lacked the requisite criminal intent for the charged offense. And all of his appellate arguments rest on his claimed ignorance of the law.
>
> In *Jorge M.*, *supra*, 23 Cal. 4th 866, the California Supreme Court rejected an interpretation of the AWCA that would require actual knowledge that a firearm is illegal to possess (*id.* at p. 886), and instead construed former section 12280(b) to require "knowledge of, or negligence in regard to, *the facts* making possession criminal." (*Id.* at p. 887, italics added.) That is to say, the prosecution must prove only that "the defendant knew or reasonably should have known the firearm *possessed the characteristics*" bringing it within a type of firearm prohibited by the AWCA. (*Ibid.*, italics added, original italics omitted.)
>
> The court explained that this standard left room on the margins for cases of innocent possession, "where the information reasonably available to a gun possessor is too scant to prove he or she should have known the firearm had the characteristics making it a defined assault weapon." (*Jorge M.*, *supra*, 23 Cal.4th at p. 886.) Yet requiring proof that a defendant actually knew the law would set too strict a standard and impede effective enforcement, as "[n]othing in the language . . . of the AWCA suggests the Legislature intended to create, in section 12280, an exception to the fundamental principle that all persons are obligated to learn of and comply with applicable laws." (*Jorge M.*, at p. 886.) Thus, as construed by the court, the scienter element of former section 12280(b) relates solely to a firearm's characteristics, not its illegality. (*See Jorge M.*, at pp. 885–886.)
>
> The court touched upon the kind of evidence that would suffice. With respect to proving actual knowledge of a firearms' characteristics, it explained that "knowledge may be proven circumstantially," and that while "in many instances a defendant's direct testimony or prior statement that he or she was actually

ignorant of the weapon's salient characteristics will be sufficient to create reasonable doubt," the prosecution "could rebut a claim of actual ignorance by evidence of the defendant's long and close acquaintance with the particular weapon or familiarity with firearms in general. . . ." (*Jorge M.*, *supra*, 23 Cal. 4th at pp. 884–885.) With regard to proving the defendant should have known a firearm's characteristics, the court noted that in most instances the fact that a firearm is of a make and model defined by statute as a prohibited weapon "can be expected to be sufficiently plain on examination of the weapon so that evidence of the markings, together with evidence the accused possessor had sufficient opportunity to examine the firearm, will satisfy a knew-or-should-have-known requirement." (*Id*. at p. 885.) And, most notable for purposes here, it observed that this conclusion "would not be altered by consideration of the generic definition of 'assault weapon' " at issue in this case, because "[t]hat section defines the class of restricted weapons by their possession of specified *and readily discernible* physical characteristics." (*Id*. at p. 885, fn. 9, italics added.)

The court went on to explain that, "because of the general principle that all persons are obligated to learn of and comply with the law, in many circumstances a trier of fact properly could find that a person who knowingly possesses a semiautomatic firearm reasonably should have investigated and determined the gun's characteristics." (*Jorge M.*, *supra*, 23 Cal. 4th at p. 885.) Only "exceptional cases" would involve instances of "largely innocent possession" not punishable as a felony offense, such as where "the salient characteristics of the firearm are extraordinarily obscure, or the defendant's possession of the gun was so fleeting or attenuated as not to afford an opportunity for examination." FN 6. (*Ibid*.)

> FN 6. Defendant does not argue on appeal that he falls within either of these "exceptional" situations, nor does he appear to have made any such argument below.

The court concluded: "The question of the defendant's knowledge or negligence is, of course, for the trier of fact to determine, and depends heavily on the individual facts establishing possession in each case. Nevertheless, we may say that in this context the Legislature presumably did not intend the possessor of an assault weapon to be exempt from the AWCA's strictures merely because the possessor did not trouble to acquaint himself or herself with the gun's salient characteristics. Generally speaking, a person who has had substantial and unhindered possession of a semiautomatic firearm reasonably would be expected to know whether or not it is of a make or model listed in section 12276 or has the clearly discernable features described in section 12276.1. At the same time, any duty of reasonable inquiry must be measured by the circumstances of possession; one who was in possession for only a short time, or whose possession was merely constructive, and only secondary to that of other joint possessors, may have a viable argument for reasonable doubt as to whether he or she either knew or reasonably should have known the firearm's characteristics." (*Jorge M.*, *supra*, 23 Cal. 4th at pp. 887–888.)

6

> In short, *Jorge M.* makes clear that ignorance of the law is no defense to a charge of felony assault weapon possession. Only ignorance of a weapon's actual characteristics is exonerating, under circumstances in which the defendant could not reasonably be expected to have known of those characteristics. (*See Jorge M.*, *supra*, 23 Cal. 4th at p. 888 [evidence of defendant's knowledge or constructive knowledge of assault weapon's salient characteristics held sufficient]; *People v. Nguyen* (2013) 212 Cal. App. 4th 1311, 1323–1325 [same]; *In re Daniel G.* (2004) 120 Cal. App. 4th 824, 831–832 [same].)
>
> The trial court in this case instructed the jury in accordance with Jorge M., and defendant does not challenge the instruction.

*MacFarlane*, 2016 WL 3634286, at *3-4 (footnotes omitted).

MacFarlane's trial counsel subpoenaed Deputy Gelhaus for trial to testify regarding petitioner's intent because according to the defense argument, Gelhaus had been not able to determine if the rifle was illegal. *Id*. at 2. After a hearing and reviewing the various parties' briefings, the trial court issued a four-page written ruling quashing the subpoena. *Id*. at 9. The trial court found that Gelhaus' testimony was irrelevant, and pursuant to Evidence Code section 352, any minimal relevance was outweighed by the risk of undue consumption of time, confusion of the issues and misleading the jury. *Id*. at 2. The trial court noted:

> Insofar as defendant wants to call Deputy Gelhaus as an expert witness on firearms, there's no indication that Deputy Gelhaus could offer any expert opinion favorable to defendant. In fact, all evidence points towards Deputy Gelhaus having an opinion that this rifle was a prohibited assault rifle. Therefore, any proposed expert testimony from Deputy Gelhaus would be irrelevant to the defense.
>
> Insofar as defendant wants to call Deputy Gelhaus to testify about his "inability or reluctance to identify the rifle as an assault weapon," defendant's argument is both factually and legally flawed. Factually, defendants' allegation that Gelhaus was unable or reluctant to identify the rifle as an assault rifle lacks evidentiary support. In fact, the evidence indicates Deputy Gelhaus believed it *was* an assault rifle and directed Deputy Jones to send the rifle to the DOJ lab for *confirmation* pursuant to routine procedures. Deputy Gelhaus was never asked to offer any expert opinion for prosecution purposes. Moreover, from a legal perspective, whether Deputy Gelhaus, or anyone else who inspected the rifle, was or was not able to immediately identify the rifle as a prohibited assault rifle is not relevant to the issue of whether or not *defendant* knew or reasonable should have known that it had characteristics that made it an assault weapon.

CT at 187.

**Legal Standard**

Whether grounded in the Sixth Amendment's guarantee of compulsory process or in the more general Fifth or Fourteenth Amendment guarantee of due process, "the Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense.'" *Holmes v. South Carolina*, 547 U.S. 319, 324 (2006) (*quoting Crane v. Kentucky*, 476 U.S. 683 690 (1986)); *see California v. Trombetta*, 467 U.S. 479, 485 (1984) (due process); *Chambers v. Mississippi*, 410 U.S. 284, 294 (1973) (compulsory process).

The constitutional right to present a complete defense includes the right to present evidence, including the testimony of witnesses. *See Washington v. Texas*, 388 U.S. 14, 19 (1967). But the right is only implicated when the evidence the defendant seeks to admit is "relevant and material, and . . . vital to the defense." *Id*. at 16. Additionally, a violation of the right to present a defense does not occur any time such evidence is excluded, but rather only when its exclusion is "arbitrary or disproportionate to the purposes [the exclusionary rule applied is] designed to serve." *Holmes*, 547 U.S. at 324 (internal quotation marks omitted). This is true even if the rule under which it is excluded is "respected[,] . . . frequently applied," and otherwise constitutional. *Chambers*, 410 U.S. at 302. If the "mechanistic" application of such a rule would "defeat the ends of justice," then the rule must yield to those ends. *Id*. Still, "[o]nly rarely" has the Supreme Court held that the right to present a complete defense was violated by the exclusion of defense evidence under a state rule of evidence. *Nevada v. Jackson*, 133 S. Ct. 1990, 1992 (2013) (citing *Holmes*, 547 U.S. at 331) (rule did not rationally serve any discernable purpose); *Rock v. Arkansas*, 483 U.S. 44, 61 (1987) (rule arbitrary); *Chambers*, 410 U.S. at 302-03 (state did not even attempt to explain the reason for its rule); *Washington*, 388 U.S. at 22 (rule could not be rationally defended)).

**Discussion**

The California Court of Appeal set forth the relevant federal and state law and denied MacFarlane's claim that the quashing of the subpoena violated his rights:

> Defendant also did not argue below that quashing the Deputy Gelhaus subpoena would violate his constitutional right to compel the attendance of witnesses. However, "[t]he right of an accused to

8

compel witnesses to come into court and give evidence in the accused's defense is a fundamental one." (*People v. Jacinto* (2010) 49 Cal. 4th 263, 268). In addition, defendant's argument at most amounts only to "a new constitutional 'gloss'" on a claim he did preserve below, namely that his subpoena should not be quashed because Deputy Gelhaus was a relevant and material witness. (*See People v. Bryant, Smith and Wheeler* (2014) 60 Cal. 4th 335, 364 (*Bryant*).) We therefore proceed to the merits of this issue.

. . . .

Evidence that a third party, including even a firearms expert, had trouble recognizing this firearm as an illegal assault weapon could be potentially relevant only if the prosecution could not prove beyond reasonable doubt defendant actually knew his firearm possessed the prohibited attributes. For only if defendant lacked actual knowledge of those attributes would it be necessary for the prosecution to prove he reasonably should have known of them. (*See Jorge M.*, *supra*, 23 Cal.4th at p. 887.) In opposing the motion to quash the Gelhaus subpoena, though, defendant didn't argue he would claim actual ignorance of the gun's salient attributes such that the critical issue at trial would be the "should have known" standard. Thus, he failed below to demonstrate how Gelhaus' testimony might be relevant. (*See In re Finn*, *supra*, 54 Cal. 2d at p. 813.)

The evidence at trial, moreover, revealed that Deputy Gelhaus would not have been a relevant witness, much less a vital one, unlike in *Washington v. Texas* (1967) 388 U.S. 14, the sole authority defendant cites. (*See id*. at p. 16.) There was ample undisputed evidence, both circumstantial and direct, that defendant actually knew his gun possessed the proscribed attributes, and defendant never contended otherwise. (*See Jorge M.*, *supra*, 23 Cal. 4th at p. 884 ["knowledge may be proven circumstantially"].) He admitted facts demonstrating his "familiarity with firearms in general" (*see id*. at p. 885): he had military firearms training twice a year for four years some 40 years ago while serving in the Air Force, including training with an M–16 rifle, and presently he owned a shotgun. He also admitted facts demonstrating his "long and close acquaintance" with this rifle's physical features (*see ibid*.): he admitted "shopping around" and researching the purchase of this rifle ahead of time, through "[v]arious stores, gun magazines, catalogs" and online, and he then spent five hours disassembling and modifying the weapon. And, he admitted actual knowledge of the rifle's prohibited features too: he admitted he bought the pistol grip, telescoping stock and fore-end grip and put them on the gun, he admitted the rifle is semiautomatic and has a detachable magazine, and he also admitted it's a centerfire weapon, testifying "I think so. That's—that took me a while to figure it out, but, yes, it is."

Defendant admitted that he knew the gun had these features, and there was no evidence to the contrary that could have created reasonable doubt. (*See Jorge M.*, *supra*, 23 Cal.4th at pp. 884–885.) *He merely claimed ignorance of the law*. As he now puts it in his appellate brief, his "sole defense would be that he did not know or reasonably could not have known that the rifle he purchased and wanted modified to accommodate his physical disabilities was

> *illegal*." (Italics added.) Yet this entire theory of defense was legally unsound. For as explained, ante, the Assault Weapons Control Act confers no exemption on the owners of firearms from "the fundamental principle that all persons are obligated to learn of and comply with applicable laws." (*Jorge M.*, *supra*, 23 Cal. 4th at p. 886; *see also People v. King* (2006) 38 Cal. 4th 617, 627 [to prove knowledge of illegal firearm possession, prosecution "need not prove that the defendant knew there was a law against possessing the item, nor that the defendant intended to break or violate the law"].) And, the undisputed evidence at trial that defendant actually did know the gun had the attributes of an assault weapon rendered irrelevant the question whether he reasonably should have discovered those features. FN 12 It thus was irrelevant whether anyone else had difficulty discerning them, firearms expert or no.
>
>> FN 12 Nor has defendant ever claimed this is an exceptional case, where "the salient characteristics of the firearm are extraordinarily obscure, or the defendant's possession of the gun was so fleeting or attenuated as not to afford an opportunity for examination. . . ." (*Jorge M.*,*supra*, 23 Cal.4th at p. 885.)
>
> Finally, we also are satisfied there was nothing fundamentally unfair about this trial. (*See Bryant*, *supra*, 60 Cal. 4th at p. 368.) Even if Deputy Gelhaus might have offered relevant testimony on this point, it would not have been vital to the defense. (*Compare Washington v. Texas*, *supra*, 388 U.S. at p. 16 with, e.g., *People v. Cornwell* (2005) 37 Cal. 4th 50, 82, *disapproved on another ground*, *People v. Doolin* (2009) 45 Cal. 4th 390, 421, fn. 22.) Deputy Jones testified on cross-examination that he consulted Deputy Gelhaus for a second opinion, Gelhaus was a firearms expert, Gelhaus asked to see the rifle, and ultimately Gelhaus sent it to the Department of Justice because "[h]e didn't want to offer an opinion on it. He said he stopped doing that. . . ." So the jury already knew that Deputy Gelhaus would not opine definitively if this was an assault weapon. And defense counsel argued that theory to the jury. Putting Deputy Gelhaus on the stand to confirm these events was not essential. (*See Cornwell*, at p. 82.) Trial courts do not violate the Constitution by excluding evidence that is repetitive or "'"only marginally relevant."'" (*Holmes v. South Carolina* (2006) 547 U.S. 319, 326.)

*MacFarlane*, 2016 WL 3634286, at *12-14 (footnote omitted).

MacFarlane has failed to demonstrate the state court opinion was an unreasonable application of Supreme Court authority or an unreasonable determination of the facts. MacFarlane did not dispute at trial the he knew his gun possessed the proscribed features that made it illegal. On direct and cross-examination MacFarlane admitted that he had actual knowledge of the rifle's prohibited features because he modified it by purchasing parts for it on the internet. RT at 724-25, 729-31, 737. Because MacFarlane admitted this, the trial court and the California Court of Appeal

10

noted it was not relevant what Deputy Gelhaus thought and denying this witness did not violated MacFarlane's constitutional rights.

Even assuming-had he testified-that Deputy Gelhaus' testimony was relevant and was what MacFarlane expected it would be, trial counsel presented the defense theory about the testimony in his closing argument. Trial counsel noted that Deputy Jones had been unsure if the rifle was an assault weapon and called Deputy Gelhaus for a second opinion:

> He's going to call the main guy, the big guy in the sheriff's department because what are we going to do about this?
>
> Well, he tries to explain it to him over the telephone and he doesn't say, "Well, you got—this is definitely an assault weapon, arrest Mr. MacFarlane." He says, "Why don't you grab it, bring it to me, and let me inspect it."
>
> . . . .
>
> What's the big issue if it's so easy to figure all of this out . . . .
>
> . . . .
>
> So now he goes to . . . to the sheriff's department. They take a look at it. "And, well, it still sure looks like an assault weapon, but you know what, I think that we've got to send it to the Department of Justice and have them start doing some tests on here and trying to figure out what this is."
>
> And so now we have the armorer, the training person from the sheriff's department. We have Deputy Jones who is the SWAT man, and still no determination.

RT at 770-72. There was no constitutional violation by excluding evidence that was repetitive or only marginally relevant. *See Holmes* at 326. To the extent that MacFarlane challenges the state law determination of what constitutes an assault rifle and the relevant intent requirement, he is not entitled to habeas relief. *See Estelle v. McGuire*, 502 U.S. 62, 67 (1991) ("We have stated many times that 'federal habeas corpus relief does not lie for errors of state law.'") The state court decision was not objectively unreasonable. Therefore, the petition is denied.[2]

---

[2] To the extent MacFarlane seeks to bring any other claims, the above claim is the only exhausted federal claim presented in the petition.

## CERTIFICATE OF APPEALABILITY

The federal rules governing habeas cases brought by state prisoners require a district court that issues an order denying a habeas petition to either grant or deny therein a certificate of appealability. *See* Rules Governing § 2254 Cases, Rule 11(a).

A judge shall grant a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), and the certificate must indicate which issues satisfy this standard. *Id*. § 2253(c)(3). "Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: [t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

Here, petitioner has made no showing warranting a certificate and so none is granted.

## CONCLUSION

1. For the foregoing reasons, the petition for writ of habeas corpus is **DENIED**. A Certificate of Appealability is **DENIED**. *See* Rule 11(a) of the Rules Governing Section 2254 Cases.

2. The Clerk shall substitute as respondent, David Koch, the Chief Probation Officer for Sonoma County.

**IT IS SO ORDERED.**

Dated: January 16, 2018

JAMES DONATO
United States District Judge

United States District Court
Northern District of California

1  UNITED STATES DISTRICT COURT
2  NORTHERN DISTRICT OF CALIFORNIA

ALAN BRUCE MCFARLANE,
    Plaintiff,

v.

STEPHEN FREITAS,
    Defendant.

Case No. 16-cv-06401-JD

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on January 16, 2018, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Alan Bruce McFarlane
P.O. Box 5383
Corning, CA 96021

Dated: January 16, 2018

        Susan Y. Soong
        Clerk, United States District Court

        By: /s/ Lisa R. Clark
        LISA R. CLARK, Deputy Clerk to the
        Honorable JAMES DONATO